# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 497 | **DATE** | 3/29/2001 |
| **CASE TITLE** | JOHN MANOS vs. ANTHONY CAIRA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants in part and denies in part defendants' Motions to Dismiss [4-1, 14-1]. The Court dismisses Counts III and IV with prejudice. Counts I and II remain, but the Court grants defendants' motion to dismiss the following portions of those counts: (1) any claim against Baker and Krueger for damages is dismissed with prejudice; (2) any request for relief based on the Second Amendment is dismissed with prejudice; and (3) any request for relief based on Fourteenth Amendment's Due Process Clause, except as to the Village of Elmwood Park, is dismissed with prejudice. Defendants Devine and Elmwood Park Police Department are hereby terminated as parties. Defendants Baker, Krueger, Caira, Braglia, Bertucci, Fagiano, and Village of Elmwood Park remain. Except as provided herein, defendants' motion to dismiss is denied. Status hearing set for 4/18/01 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

MAR 30 2001 date docketed

docketing deputy initials

date mailed notice

**Document Number**

23

TBK

courtroom deputy's initials

FILED 01 MAR DOCKETING 3:37

Date/time received in central Clerk's Office

mailing deputy initials

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN MANOS, a.k.a. John )
Manolatos, )
         )
    Plaintiff, )
         )
v.          )    No. 00 C 497
         )
ANTHONY CAIRA, individually and in )    Judge Ronald A. Guzman
his official capacity as Police Commander )
for the Village of Elmwood Park; Tom )
Baglia, individually and in his official )
capacity as Chief of Police for the Village )
of Elmwood Park; George Bertucci, )
individually and in his official capacity )
as Deputy Chief of Police for the Village )
of Elmwood Park; Frank Fagiano, )
individually and in his official capacity )
as Police Detective for the Village of )
Elmwood Park; Elmwood Park Police )
Department; Village of Elmwood Park; )
Steven Krueger, individually and in his )
official capacity as Assistant Illinois )
State's Attorney for the County of Cook; )
Russell Baker, individually and in his )
official capacity as Assistant Illinois )
State's Attorney for the County of Cook, )
Richard Devine, in his official capacity )
as Illinois State's Attorney for the County )
of Cook, )
         )
    Defendants. )

DOCKETED

MAR 3 0 2001

## MEMORANDUM OPINION & ORDER

John Manos ("Manos"), also known as John Manolatos, has sued Anthony Caira, Police Commander for the Village of Elmwood Park; Tom Braglia,[1] Chief of Police for the Village of Elmwood Park; George Bertucci, Deputy Chief of Police for the Village of Elmwood Park; Frank Fagiano, Police Detective for the Village of Elmwood Park, in their individual and official capacity; Elmwood Park Police Department; Village of Elmwood Park; Steven Krueger and Russell Baker individually and in their official capacity as Cook County Assistant State's Attorneys; and Richard Devine in his official capacity as Cook County State's Attorney, under 42 U.S.C. § 1983 ("section 1983") for alleged deprivation of his rights under the Second, Fourth, and Fourteenth Amendments to the United States Constitution. Defendants have moved to dismiss the complaint pursuant to the Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court grants in part and denies in part defendants' motions.

## FACTS

On October 23, 1997, Peter Skoufis ("Skoufis") burglarized Manos' residence and stole eleven firearms that Manos lawfully owned and possessed and registered with the Illinois State Police. (Compl. ¶¶ 13, 15.) On October 24, 1997, the Elmwood Park Police Department recovered the firearms and confiscated them for evidentiary purposes to be used in the prosecution's case against Skoufis. (*Id.* ¶ 14.) Manos was the complaining witness in *Illinois v. Peter Skoufis* heard in the Fourth Municipal District of Cook County. (*Id.* ¶ 1.) On July 14, 1998, Skoufis pled guilty to theft. (*Id.* Count IV ¶ 5.)

---

[1] Tom Braglia, Chief of Police for the Village of Elmwood Park was improperly named in plaintiff's Complaint as Tom Baglia.

After the conclusion of the criminal proceedings against Skoufis, Manos appeared in court in the Fourth Municipal Judicial District of Cook County numerous times on a motion for the return of his firearms. On September 17, 1998 and December 3, 1998, Judge Prendergast denied Manos' motion for the return of his firearms because the Bureau of Alcohol, Tobacco, and Firearms ("ATF") traces on the firearms had not been completed due to a delay caused in part by Manos' changing his name from Manolatos to Manos. (*Id.* Count I ¶¶ 31, 44; Count III ¶ 2.) On November 16, 1998, Judge Golniewicz denied Manos' motion for the return of his property because the ATF traces were still incomplete. On January 27, 1999, Judge Prendergast again denied Manos' motion for the return of his firearms because the ATF traces were not complete. (*Id.* Count I ¶¶ 9-10; Count III ¶ 2.)

In Counts I and II, Manos alleges that Krueger, Baker, Caira, Braglia, Bertucci, Fagiano, Elmwood Park Police Department, and the Village of Elmwood Park violated his rights as guaranteed under the Second, Fourth, and Fourteenth Amendments to the U.S. Constitution when they unlawfully retained his firearms after the proceedings concerning Skoufis had come to a close and when they engaged in a conspiracy to do so.

In Count III, Manos alleges that Assistant State's Attorneys Krueger and Baker, in their individual and official capacity, violated his rights as guaranteed under the Fourth and Fourteenth Amendments when they made false representations to the court regarding: (1) the progress of the ATF traces (*id.* Count III ¶ 2); (2) seizure by Elmwood Park or the federal government (*id.* ¶ 3); (3) that the firearms were assault rifles (*id.* ¶ 7); (4) that the ATF delay was due to Manos' change in name (*id.* ¶¶ 8-9); and (5) that Illinois law prohibits "a lawful firearms owner to reside with convicted felons [and] that Manos resided at the time with two convicted felons" depriving him from the right of return of the firearms (*id.* ¶¶ 5-6). Manos alleges that Krueger and Baker acted

3

with "a reckless disregard" and "indifference" towards his rights by not reasonably investigating the alleged unreasonable delay in the completion of the ATF traces and by making representations without knowledge as to the truth or falsity of such representations resulting in the deprivation of his lawfully owned property. (*Id.* ¶¶ 10-16.).

In Count IV, Manos alleges that his right to due process rights was violated by Richard Devine in his official capacity as Cook County State's Attorney and requests injunctive relief. (*Id.* Count IV ¶¶ 1-2, 10.) Manos alleges that Devine deprived him of his property when he, through Krueger and Baker, opposed and objected to the return of his property. (*Id.*) Against Devine, Manos seeks an injunction for the return of his firearms.

## DISCUSSION

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(1) and 12(b)(6). Although the Cook County State's Attorney did not do so, the Court addresses the Rule 12(b)(1) motion first, and the Rule 12(b)(6) motion second.

### I. Rule 12(b)(1)

The Cook County State's Attorney has moved to dismiss the complaint for lack of jurisdiction on the grounds that the *Rooker-Feldman* and *Younger* abstention doctrines apply. Abstention doctrines are jurisdictional in nature. *See Hanover Group Inc. v. Manufactured Home Communities Inc.*, No. IP00-0739-C-T/G, 2000 WL 1124877, at *2 (S.D. Ind. July 12, 2000). A Rule 12(b)(1) motion to dismiss requires a court to dismiss any action for which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(l) motions are based on either facial or factual attacks on jurisdiction. *Villasenor v. Industrial Wire & Cable, Inc.*, 929 F. Supp. 310, 311

(N.D. Ill. 1996). If the defendant factually attacks the plaintiff's assertion of subject matter jurisdiction, the court may look beyond the jurisdictional allegations in the complaint and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *see also Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir. 1989). To withstand defendants' Rule 12(b)(1) motion, the plaintiff must competently prove by a preponderance of the evidence that subject matter jurisdiction exists. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995); *see also Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993); *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

The *Rooker-Feldman* abstention doctrine prevents the federal district court's exercise of jurisdiction over the review of decisions of state courts. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923). If the state court judgment caused plaintiff's alleged injury, then the *Rooker-Feldman* doctrine precludes the federal court's exercise of jurisdiction. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). However, if the plaintiff alleges "that people involved in the decision violated some independent right of his, . . . then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm." *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995). "Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment . . . ." *Id.* "This result would be inconsistent with cases in which, for example, police officers are sued under 42 U.S.C. § 1983 for having fabricated evidence that resulted in the plaintiff's being convicted in a state court." *Id.*

In this case, Manos alleges, among other things, that defendants conspired to withhold his firearms from him even after Skoufis' criminal proceedings ended by lying to state court judges about the necessity of an ATF trace and the progress of such traces. Manos clearly alleges that defendants' conduct during the proceedings, independent of the state court rulings themselves which denied his motion to return the firearms, violated his right to due process and equal protection. Manos thus alleges that defendants succeeded in corrupting the judicial process in order to obtain a favorable ruling regarding the continued withholding of his firearms during the ATF traces. Because the Seventh Circuit in *Nesses* carved out an exception to the application of the *Rooker-Feldman* doctrine in a case such as this one, the Court denies the Cook County State's Attorney's motion to dismiss on this ground.

Next, the Cook County State's Attorney argues that this Court should abstain from exercising jurisdiction in this case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* abstention doctrine requires "federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances–like bias or harassment–exist which auger against abstention." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998).

The problem, as discussed above, is that Manos has alleged throughout the Complaint that defendants have acted in bad faith and have conspired to harass him with vindictive bias. Having been provided no evidence to cast doubt on the Manos' version of events as described in the Complaint, the Court cannot find that it is required to abstain under *Younger*.

The last jurisdictional consideration involves the Eleventh Amendment[2] and surprisingly was not addressed by the Cook County State's Attorney or the Assistant State's Attorneys. In Count III, Manos has sued Krueger and Baker in their official capacity as Assistant State's Attorneys and seeks compensatory and punitive damages.

A suit against Assistant State's Attorneys in their official capacity is a suit against the Cook County State's Attorney. *See Taylor v. Partee*, No. 90 C 1134, 1991 WL 136015, at *2 (N.D. Ill. July 17, 1991). "[T]he Eleventh Amendment prohibits suits against the state, its agencies, and its officials acting in their official capacities." *Id.* "Illinois has made its state's attorneys 'state officials' and liability under Section 1983 does not extend either to suits against the state itself or to official capacity lawsuits against state officials." *Id.* (discussing *Ingemunson v. Hedges*, 133 Ill. 2d 364, 367 (Ill. 1990), and *Houston v. Cook County*, 758 F. Supp. 1225, 1227 (N.D. Ill. 1990)).

Manos' suing Baker and Krueger in their official capacity as Assistant State's Attorneys in Count III is the same as his suing the Cook County State's Attorney himself. Because the Cook County State's Attorney is a "state official," Manos' claim for damages against the Assistant's State's Attorneys in their official capacity is jurisdictionally barred by the Eleventh Amendment.

## II. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court accepts the "well-pleaded allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal is proper where "it appears beyond doubt

---

[2]"The Seventh Circuit considers Eleventh Amendment immunity to be a jurisdictional bar." *Hodgson v. Mississippi Dep't of Corrections*, 963 F. Supp. 776, 783 (E.D. Wis. 1997).

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, if the complaint fails to allege an element necessary to obtain relief, dismissal is appropriate. *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

Section 1983 "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994)). To state a claim under section 1983, a plaintiff "must show (1) action taken under color of state law, . . . [and] (2) a deprivation of a right protected by the Constitution." *Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301 (7th Cir. 1990).

## A. Prosecutorial Immunity

Baker and Krueger argue that they should be afforded absolute immunity from liability for damages for their participation in and their alleged false representations to the court at the four hearings regarding Manos' motions for the return of his firearms. The Court agrees.

"Prosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their official duties." *Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995). "When determining which type of immunity a government official enjoys, we look to the nature of the function that the official was performing in the particular case." *Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir. 1986).

Thus, the Court must examine the function that Baker and Krueger were performing in this case, that is, appearing before judges and allegedly making false statements in opposition to Manos' motions for the return of firearms because they claimed they lacked evidence that he was

the rightful owner.[3] Under Illinois law: "Upon conviction of an offense in which a weapon was used or possessed by the offender, any weapon seized shall be confiscated by the trial court." 720 ILL. COMP. STAT. 5/24-6(a). Further, "[a]ny stolen weapon so confiscated, when no longer needed for evidentiary purposes, shall be returned to the person entitled to possession, if known. . . . The court may not order the transfer of the weapon to any private individual . . . other than to return a stolen weapon to its rightful owner." 720 ILL. COMP. STAT. 5/24-6(b). Illinois law thus required the court to determine the rightful owner of the stolen firearms. Baker and Krueger were aiding the court in its statutory obligation to determine whether Manos was entitled to possession of the weapons stolen by Skoufis. In enforcing Illinois law, Baker and Krueger were acting as advocates for the state. Thus, the Court finds that the assistant state's attorneys were performing an advocate's duty and function when opposing Manos' motion for the return of weapons in order to aid the court in ascertaining whether he was entitled to possession of the weapons.

This is not the end of the analysis, however. The Court "must consider three factors in determining whether a prosecutor is absolutely immune from damages for her conduct . . . ." *Lucien v. Preiner*, 967 F.2d 1166, 1167 (7th Cir. 1992).

> First, we examine the historical or commonlaw basis for the immunity in question. Second, we examine whether the functions which the official performs subjects him to the same obvious risks of entanglement in vexatious litigation as is characteristic of the judicial process. . . . And third, we consider whether the official is subject to checks upon abuses of authority . . . .

*Mother Goose Nursery Schools v. Sendak*, 770 F.2d 668, 671 (7th Cir. 1985).

_____

[3]Although in his opposition brief to the State's Attorney's motion to dismiss Manos describes Baker and Krueger's function as advising and counseling police officers, the Complaint is utterly devoid of any allegation that they advised and counseled police officers. (*Compare* Pl.'s Mem. Resp. Defs.' Mot. Dismiss at 2-3, *with* Compl.) The Complaint merely states that Baker and Krueger made false representations to courts at four different motion hearings.

With regard to the first factor, at common law, prosecutors were absolutely immune from liability for damages for making false statements in judicial proceedings and for eliciting false testimony from witnesses. *Burns v. Reed*, 500 U.S. 478, 489-90 (1991). "This immunity was extended to encompass a prosecutor's conduct in 'any hearing before a tribunal which performed a judicial function.'" *Lucien*, 967 F.2d at 1167 (quoting *Burns*, 500 U.S. at 479). It is clear from the allegations in the Complaint that Baker and Krueger's conduct of which Manos complains occurred solely at the four hearings before Judges Golniewicz and Prendergast.

With regard to the second factor, the risk of vexatious litigation is clear. If an assistant state's attorney did not enjoy absolute immunity for statements made at hearings regarding the ownership of confiscated weapons, he would risk liability for damages any time he expressed doubt that the person claiming to be the owner of confiscated weapons was entitled to possession or opposed the motion for the return based on a lack of evidence of ownership. This, in turn, might have a chilling effect on an assistant state's attorney's advocacy for the state.

The Court's analysis of the third factor also favors granting Baker and Krueger absolute immunity. As stated by the Seventh Circuit in *Henderson v. Lopez*, Illinois law provides many checks on assistant state's attorneys for abuses of authority." 790 F.2d at 46. First, "a party who disagrees with the action resulting from the state's attorney's opinion may seek a writ of mandamus." *Id.* at 47. Second, "a state's attorney always stands amenable to professional discipline by an association of her peers." *Id.* Third, "the county officials who appoint assistant state's attorneys may remove her from office for abusing her position. Those officials, as well as the state's attorney, must answer to the public at the ballot box for incidents which the public will not tolerate." *Id.* For the same reasons discussed in *Henderson*, the Court finds that assistant state's attorneys are subject to numerous checks for abuses of authority.

For the above reasons, the Court finds that Baker and Krueger are entitled to absolute immunity for the representations made to the court at the hearings regarding Manos' motion for the return of his firearms. The Court thus grants Baker and Krueger's motion to dismiss all claims against them for liability for damages.

## B. Second Amendment Claim

Manos alleges that all defendants have violated his right to keep and bear arms as guaranteed under the Second Amendment. (*See* Compl., Count I ¶ 62, Count II ¶ 2, Count III ¶ 17.) The Court disagrees. The Second Amendment guarantees the right to bear arms and "regulates only the activities of the federal government–not those of the states or their subdivisions." *Sklar v. Byrne*, 727 F.2d 633, 637 (7th Cir. 1984); *see Quilici v. Village of Morton Grove*, 695 F.2d 261, 269-70 (7th Cir. 1982) (holding that Second Amendment is not enforceable against state action). Defendants in this action are neither part of the federal government nor employed by the federal government. As such, Manos' Second Amendment claim fails to state a claim and the Court dismisses all claims based on the Second Amendment with prejudice.

## C. Fourteenth Amendment Procedural Due Process Claim

First, the Court will determine whether Manos states a claim under the Fourteenth Amendment Due Process Clause against Caira, Braglia, Bertucci, and Fagiano in their individual capacity. Second the Court will determine if Manos states a claim against Caira, Braglia, Bertucci, and Fagiano in their official capacity and against the Elmwood Park Police Department; Village of Elmwood Park, and Cook County State's Attorney.[4]

---

[4]Plaintiff's Fourteenth Amendment procedural due process claim merely seeks injunctive relief as to the Cook County State's Attorney and is therefore not barred by the Eleventh

First, defendants Caira, Braglia, Bertucci, and Fagiano argue that Manos fails to state a claim against the defendants in their individual capacity for a violation of his rights under the Fourteenth Amendment Due Process Clause. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Where plaintiff bases a procedural due process claim on the random and unauthorized conduct of a state actor and a meaningful postdeprivation remedy exists at state law, "a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996) (discussing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), and *Daniels*, 474 U.S. at 339-40). "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 533.

On one hand, Manos argues that there are no available state law remedies. Manos principally relies on *People ex rel. Carey v. Covelli*, 336 N.E.2d 759, 764-65 (Ill. 1975), *People v. Hermann*, 501 N.E.2d 842, 845-46 (2d Dist. 1986), and *People v. Aikens*, 264 N.E.2d 850 (3d Dist. 1970) (abstract). On the other hand, defendants argue that Illinois does provide a suitable postdeprivation remedy–an action for replevin. 735 ILL. COMP. STAT. 5/19-101.

The Court examines the cases upon which Manos relies and finds each one distinguishable from the instant case. The Court addresses each in turn.

First, Manos relies on *People ex rel. Carey v. Covelli* (hereinafter *"Covelli"*) for the proposition that he may not proceed in a civil action to recover his firearms. 336 N.E.2d at 759. In *Covelli*, where daughters of murder victim Sam Giancana obtained an injunction from an Illinois chancery court against the Cook County State's Attorney restraining him from inspecting,

---

Amendment.

reviewing, listening to, opening, or exerting control over a desk, locked file cabinet, and audio tape cassettes seized from Giancana's home after his death, the Illinois Supreme Court issued a writ of mandamus commanding the chancery court judge to expunge his order and dismiss the complaint because pursuant to statute, the daughters should have sought relief from the judge before whom the items seized were returned. *Id.* at 764. The Court fails to see how *Covelli* supports Manos' cause. The *Covelli* court did not address whether a replevin action was available to the daughters. Further, the state's attorney's position in *Covelli* that the daughters had an adequate remedy at law by way of an action in replevin further bolsters defendants' argument that such a remedy indeed exists.

Further, the Court finds *People v. Hermann*, 501 N.E.2d 842, 845-46 (2d Dist. 1986), and *People v. Aikens*, 264 N.E.2d 850 (3d Dist. 1970), inapposite. These cases involved defendants in criminal cases who sought the return of property seized pursuant to search warrants and consent searches or upon arrest. Neither case addressed whether a replevin action is available to a complaining witness whose property is used as evidence in a criminal trial. *Hermann* merely stands for the proposition that the Law Enforcement Disposition of Property Act, 765 ILL. COMP. STAT. 1030/1 *et seq.*, and its procedures are inapplicable with regard to the disposition of property under the Criminal Code, 725 ILL. COMP. STAT. 5/108-11. 501 N.E.2d at 845-46. The *Aikens* one-paragraph abstract summary states the court held that the civil remedy of replevin was unavailable to a criminal defendant who sought to recover property surrendered upon arrest, but that he was entitled to a hearing to determine the reason for withholding the property and ownership of the property. 264 N.E.2d at 850. The Court finds Manos' reliance on *Hermann* and *Aikens* puzzling. On one hand, Manos argues that only the defendant in the criminal case has standing to appeal any rulings in the criminal case and that he has no standing because he was

13

merely a witness. On the other hand, he tries to analogize his case to *Hermann* and *Aikens* in which criminal defendants, who have standing to appeal rulings in the criminal case, were forced by courts to litigate before the criminal court regarding seized property. Accordingly, the Court finds the cases on which Manos relies inapposite because they fail to address whether a replevin action is available to a non-defendant.

As argued by the State's Attorney in *Covelli*, under Illinois law, a non-defendant seeking the return of seized property has an adequate remedy at law by way of a replevin action. *See Covelli*, 336 N.E.2d at 762-63; 735 ILL. COMP. STAT. 5/19-101 ("Whenever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to possession."). Manos has provided no case which holds otherwise and the Court finds none. After all, if, as Manos argues, the Appellate Court of Illinois has found that Manos, who is not the criminal defendant and is merely a witness in the criminal trial, has no standing to appeal the court's denials of his motions for the return of the firearms in the criminal case, it would be highly unlikely that Illinois courts would deny such a person the civil remedy of replevin.

Because Illinois provides Manos with an adequate post-deprivation remedy for the alleged seizure of his property by defendants Caira, Braglia, Bertucci, and Fagiano in their individual capacity, the Court finds that no Fourteenth Amendment Due Process violation occurred. Accordingly, the Court dismisses Manos' claim based on the Due Process Clause of the Fourteenth Amendment with prejudice.

Second, the municipal employer defendants argue that Manos does not state any claim against them–either under the Fourteenth Amendment or the Fourth Amendment– because Manos

has not sufficiently alleged that his injury was caused by a policy of those municipal employers.

As an initial matter, the Court dismisses Elmwood Park Police Department as a defendant. "To be sued in Illinois, a defendant must have a legal existence, either natural or artificial." *Magnuson v. Cassarella*, 812 F. Supp. 824, 827 (N.D. Ill. 1992). "Departments within a governing body lack the required separate legal existence to be held accountable." *Glass v. Fairman*, 992 F. Supp. 1040, 1043 (N.D. Ill. 1998). The police department of the Village of Elmwood Park is merely a department within its governing body. Because Manos has sued the Village of Elmwood Park, his suing an individual department within that body adds nothing to the Complaint. *See West v. Waymire*, 114 F.3d 646, 646-47 (7th Cir. 1997). Accordingly, all claims against the Elmwood Park Police Department are dismissed with prejudice.

Next, the Court addresses whether Manos states a claim against the Village of Elmwood Park and Cook County State's Attorney. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see Williams v. Williams*, No. 96 C 0786, 1996 WL 73684, at *1 (N.D. Ill. Feb. 16, 1996) (stating Cook County State's Attorney cannot be liable under *respondeat superior* theory). "The municipality's policy must be the source of the discrimination." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). To allege a policy, plaintiff must allege:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was cause by a person with final policymaking authority.

*Id.* (internal citations and quotations omitted).

The Court finds that the Complaint fails to state a claim against the Cook County State's Attorney. The Complaint is completely devoid of any allegation that the Cook County State's

Attorney was personally involved in the hearings or that Baker or Krueger acted pursuant to a policy or custom. Therefore, the Court dismisses Count IV in its entirety and the Cook County State's Attorney is hereby terminated as a defendant.

Whether the Complaint states a claim against the Village of Elmwood Park is a closer question. Manos argues that he has alleged a policy of the Village of Elmwood Park in two ways: (1) he has alleged that the police department implemented a *de facto* policy of depriving him of his lawfully owned firearms (Compl. Count I ¶ 59); and (2) he has alleged that Braglia, Chief of Police, participated in the deprivation of his constitutional rights by falsely representing to the court that Manos'. firearms were undergoing ATF traces and could not be returned until the court determined whether Manos lived with two convicted felons (*id.* ¶¶ 40-42). The Court addresses each in turn.

"Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient. . . . The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability devoid of any well-pleaded facts." *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994) (internal quotations omitted). "Although Fed. R. Civ. P. 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury." *McTigue*, 60 F.3d at 382.

The Court finds that only a single paragraph of the Complaint furthers Manos' argument that his injury was caused by a policy. That paragraph provides in full:

> That all times herein mentioned, and all pertinent times, the ELMWOOD POLICE DEPARTMENT had implemented a de facto policy of depriving JOHN MANOS of his lawfully owned property without any legal justification or basis. The aforesaid de facto policy was directed towards JOHN MANOS' property by

ordinary and high ranking police officials of the Elmwood Park Police
Department of the Village of Elmwood Park.

(Compl. Count I ¶ 59.) This is precisely the kind of deficient pleading that the Seventh Circuit

rejected in *McTigue*, 60 F.3d at 382-83, and *Baxter*, 26 F.3d at 736, because it fails to include any

factual basis to describe a policy of bias. Thus, as in *McTigue* and *Baxter*, the Court finds that

Manos' bare allegation of a "*de facto* policy," without more, would be insufficient to withstand

defendants' motion to dismiss.

However, the Court finds that Manos has sufficiently alleged that his injury was caused by

a policy because the Complaint includes allegations that a high-ranking police official personally

took part in depriving him of his constitutional rights. "A complaint sufficiently states a claim

when a single alleged unconstitutional action has been perpetrated by a person with final

policymaking authority." *Anderson-El v. O'Keefe*, No. 93 C 2608, 1994 WL 48623, at *3 (N.D.

Ill. Feb. 14, 1994). "An official with final policymaking authority must actually participate in the

single constitutional wrongdoing, or must consciously acquiesce in the actions or inactions of

subordinates." *Id.* (citations omitted).

Manos alleges that the Chief of Police of the Village of Elmwood Park actually

participated in the seizure of Manos' firearms and the deprivation of his right to due process and

equal protection. (Compl., Count I ¶¶ 40-42.) Because under the proper circumstances a chief of

police can be one with final policymaking authority, *see, e.g., Thomas v. City of Zion*, No. 85 C

5952, 1986 WL 9554, at *2 (N.D. Ill. Aug. 28, 1986), and because the factual question of whether

the Chief of Police actually has final policymaking authority for the Village of Elmwood Park is

not one properly addressed on a motion to dismiss, the Court will not dismiss the Complaint on

this ground at this stage of the litigation. Therefore, the Court denies the Village of Elmwood

Park's motion to dismiss Manos' Fourth and Fourteenth Amendment *Monell* claims.

## D. Fourteenth Amendment Equal Protection Claim

In Count II, Manos claims that Caira, Braglia, Bertucci, Fagiano, Elmwood Park Police Department, and the Village of Elmwood Park "conspired to deprive . . . [him] of his lawfully owned property by depriving him of . . . equal protection under the U.S. Constitution." (Compl. Count II ¶ 2.) "Equal protection demands at a minimum that a municipality must apply its laws in a rational and nonarbitrary way." *Ciechon v. City of Chicago*, 686 F.2d 511, 522 (7th Cir. 1982). "This does not mean that error or mistake in the application of the law gives rise to an equal protection claim. Rather, it protects against intentional invidious discrimination by the state against persons similarly situated." *Id.* at 522-23. Where unequal treatment is solely motivated by vindictiveness, "such conduct, so motivated, violates the equal protection clause." *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). To ultimately prevail, plaintiff must prove "that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Id.* at 180.

If Manos' allegations are true and defendants singled him out for maltreatment for no reason other than to harass him, he states a claim for a violation of his equal protection rights. He sufficiently alleges that there was no legitimate purpose for the detainment of his firearms upon the conclusion of Skoufis' criminal trial. Accordingly, Caira, Braglia, Bertucci, Fagiano, and the Village of Elmwood Park's motion to dismiss Manos' equal protection claim in Count II is denied.

## E. Fourth Amendment

Caira, Braglia, Bertucci, Fagiano, and the Village of Elmwood Park have moved to dismiss Manos' Fourth Amendment claim on two grounds: (1) the Complaint fails to allege that

the initial seizure of the firearms was unlawful; and (2) the claim is barred by the two-year statute of limitations. The Court finds these arguments without merit.

The Fourth Amendment "protects people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992) (quoting U.S. CONST. amend IV). This protection applies to personal property in the civil context as well. *Id.* at 67. "A 'seizure' of property occurs where there is some meaningful interference with an individual's possessory interests in that property." *Id.* at 63. "'[R]easonableness is still the ultimate standard' under the Fourth Amendment." *Id.* at 71 (quoting *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 539 (1967)). "As is true in other circumstances, the reasonableness determination will reflect a 'careful balancing of governmental and private interests.'" *Id.* (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)).

The Court rejects defendants' first argument because the Supreme Court has held that even where the initial seizure of someone's property is lawful, the prolonged seizure of the property may render the seizure unreasonable. *United States v. Place*, 462 U.S. 696, 709-10 (1983). Therefore, Manos' allegation that defendants' retention of his firearms for use as evidence in the Skoufis' criminal trial was not unlawful does not preclude his claim that their continued retention of his firearms for months after the conclusion of the criminal proceedings became an unreasonable seizure in violation of the Fourth Amendment.

Defendants' second argument is equally unavailing. In section 1983 cases, the court adopts the forum state's statute of limitations for personal injury claims. *Baskin v. City of Des Plaines*, 138 F.3d 701, 703 (7th Cir. 1998). In Illinois, personal injury claims are subject to a two-year statute of limitations. *Id.*; 735 ILL. COMP. STAT. 5/13-202. However, federal law controls as to the date a section 1983 claim accrues. *Kelly v. City of Chicago*, 4 F.3d 509, 511

(7th Cir. 1993). Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.*

Manos does not complain that defendant's initial retention of his firearms to use as evidence at the perpetrator's trial was unlawful. He alleges that it was only upon the conclusion of the criminal proceedings against Skoufis that he began to inquire repeatedly about the return of his firearms and defendants continued to withhold his firearms and deny his requests for their return. Thus, Manos' section 1983 claim accrued after the conclusion of Skoufis' criminal proceedings and not on the date the initial retention of his firearms began. The criminal proceedings against Skoufis ended on July 14, 1998. (Compl. ¶ 16.) The complaint was filed on January 26, 2000. Therefore, the Court finds that Manos' section 1983 claim is timely. The Court thus denies Caira, Braglia, Bertucci, Fagiano, and the Village of Elmwood Park's motion because Manos' Fourth Amendment claim is timely and is otherwise sufficient to survive a motion to dismiss.

### F. Qualified Immunity as to Caira, Braglia, Bertucci, and Fagiano

"[D]ismissal of a § 1983 suit under Rule 12(b)(6) is a delicate matter that district courts should approach carefully." *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Qualified immunity is "almost always a bad ground for dismissal" and is more appropriately addressed on a motion for summary judgment. *Id.* at 775. "[A] court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Kitzman-Kelley v. Warner*, 203 F.3d 454, 457 (7th Cir. 2000).

In a single paragraph in their brief in support of the motion to dismiss, Caira, Braglia,

Bertucci, and Fagiano argue that they are entitled to qualified immunity. In fact, after two sentences outlining the general rules of qualified immunity, their argument in its entirety is as follows: "As discussed more fully in this brief, the acts and/or omissions allegedly attributed to the individually-named police officers do not violate clearly-established statutory or constitutional rights. The officers, in their individual capacities, are entitled to qualified immunity." (Mem. Law Supp. Village of Evergreen Park [sic] Defs.' Mot. Dismiss, at 7.) Unfortunately for defendants, as discussed above, the Court has read the other parts of their brief and has found that Manos alleges that Caira, Braglia, Bertucci, Fagiano, and the Village of Elmwood Park have deprived him of an actual constitutional right. Further, because defendants do not address whether those constitutional rights were clearly established at the time of the deprivation, the Court finds that defendants' qualified immunity argument has not been properly raised and thus declines to address the issue at this early stage of the litigation.

## CONCLUSION

For the aforementioned reasons, the Court grants in part and denies in part defendants' Motions to Dismiss [docket nos. 4-1, 14-1]. The Court dismisses Counts III and IV with prejudice. Counts I and II remain, but the Court grants defendants' motion to dismiss the following portions of those counts: (1) any claim against Baker and Krueger for damages is dismissed with prejudice; (2) any request for relief based on the Second Amendment is dismissed with prejudice; and (3) any request for relief based on Fourteenth Amendment's Due Process Clause, except as to the Village of Elmwood Park, is dismissed with prejudice. Defendants Devine and Elmwood Park Police Department are hereby terminated as parties. Defendants Baker, Krueger, Caira, Braglia, Bertucci, Fagiano, and Village of Elmwood Park remain. Except

as provided herein, defendants' motion to dismiss is denied.

**SO ORDERED**

ENTERED: 3/29/07

HON. RONALD A. GUZMAN

**United States Judge**